IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

VICENTE F. CASTRO,

    Defendant.

Criminal No. 02- 266(4) (SEC)

**OPINION AND ORDER**

Before the Court are the defendant's petition for a writ of error *coram nobis* (Docket # 627), the government's opposition thereto (Docket # 651), and defendant's multiple show-cause responses (Dockets # 661, 666 & 668). For the reasons stated below, the petition for writ of error *coram nobis* is **DENIED**.

**Factual and Procedural Background**

In 2002, defendant Vicente F. Castro (Castro), a native of the Dominican Republic and a lawful resident of the United States since 1995, pleaded guilty to conspiracy to commit insurance fraud, aiding and abetting to commit insurance fraud, and aiding and abetting to commit mail fraud. Docket # 362. He was sentenced to a term of three years probation, a $1,000 fine, and a special monetary assessment of $400 ($100 per count). Id. Judgment was entered accordingly on April 30, 2003. Id. On May 6, 2004, Castro requested early termination of his probation period. See Docket # 536. The U.S. Probation Office approved the request and, on August 4, 2004, the Court granted the motion to terminate Castro's probation early. See Dockets # 548 & 555.

In 2011, Castro sought legal advice with regard to his immigration status and learned that, since he had pleaded guilty to an aggravated felony (loss amount in excess of $10,000), he is a deportable alien under the immigration laws of the United States. 8 U.S.C. § 1227. His residence permit expired on June 27, 2013. Docket # 627. He then filed a writ of error *coram nobis* arguing that his attorney's erroneous advise about the immigration consequences of pleading guilty to criminal charges constituted ineffective assistance of counsel under the Sixth Amendment. Id.  His counsel at the momment, Frank D. Inserni, who also represents him in this petition for *coram nobis*, states that the "[u]ndersigned's best recollection of the negotiation and representation to Mr. Castro as his counsel was that a sentence of probation granted if he cooperated would not affect his status as resident of the United States." Docket # 627, p. 2. Accordingly, Castro requests the Court to vacate the judgment and enter a new judgment "to reflect an amount less than $10,000" or, in the alternative, grant a new trial. Id.  The United States opposed the petition by arguing that Castro's claim does not meet the First Circuit's tripartite test for *coram nobis* relief, and that his request cannot be made under Padilla v. Kentucky, 559 U.S. 356 (2010), because the Supreme Court held in Chaidez v. United States, 133 S.Ct. 1103 (2013), that the rule in Padilla cannot be applied retroactively. Docket # 651.

After reviewing Castro's petition, and the government's response, the Court issued an order to show cause why it "should not deny his petition of *coram nobis*, in light of the Supreme Court's decision in Chaidez." In response, Castro filed three different motions arguing essentially that the Supreme Court's holding in Chaidez is inapplicable to situations of affirmative misrepresentation (he contends that Chaidez only applies when a criminal

lawyer fails to advice about immigration consequences), and that the Court should follow the non-binding Second Circuit's holding in Kovacs v. United States, 744 F.3d 44 (2nd Cir. 2014). Castro further requests the Court to hold an evidentiary hearing to present evidence corroborating the alleged misrepresentation made by his attorney of record regarding the immigration consequences of pleading guilty. Id.[1]

**Standard of Review**

In federal criminal cases, the writ of *coram nobis* is "available as a remedy of last resort for the correction of fundamental errors of fact or law." United States v. George, 676 F.3d 249, 253 (1st Cir. 2012) (citing Trenkler v. United States, 536 F.3d 85, 93 (1st Cir. 2008)). A federal court's authority to grant *coram nobis* relief derives from the All Writs Act, "which empowers federal courts to 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" Id. (quoting 28 U.S.C. § 1651(a)).

The writ of *coram nobis* "'provides a way to collaterally attack a criminal conviction' for an individual who is out of custody 'and therefore cannot seek habeas relief' under 28 U.S.C. § 2255 or § 2241." In re Ifenatuora, 528 Fed. Appx. 333, 335 (4th Cir. 2013) (quoting Chaidez, 133 S.Ct. at 1106 n.1). The First Circuit has formulated a tripartite test under which a *coram nobis* petitioner must (1) explain his failure to seek earlier relief from

---

[1] On June 26, 2012 (before filing the writ of *coram nobis*), Castro requested the transcripts of the change of plea hearing held on December 20, 2002 and the sentencing held on April 30, 2003. See Dockets 619 & 320. The next day, the Clerk of Court internally processed the expedited transcripts request and notified the court reporter. See Court only annotation dated June 27, 2012. The Court engaged in further efforts to make the transcripts available to the defendant, as well as the court reporter, but unfortunately the transcripts could not be produced to the Defendant. See Dockets # 623 & 625. In any event, as explained below, the content of the requested transcripts would not have any effect on the Court's decision.

Criminal No. 02-266(4) (SEC) Page 4

judgment; (2) show that he continues to suffer significant collateral consequences from the judgment; and (3) demonstrate that the judgment resulted from an error of the most fundamental character. George, 676 F.3d at 254. "Even if the test is satisfied, the court retains discretion over the ultimate decision to grant or deny the writ." Id. at 255.

**Applicable law and analysis**

"Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel." Padilla, 559 U.S. at 364. However, before the Supreme Court's holding in Padilla, numerous courts of appeals, including the First Circuit, had held that deportation was only a "*collateral* concomitant" to criminal conviction, not comprehended within the scope of representation required by the Sixth Amendment. United States v. González, 202 F.3d 20, 25 (1st Cir. 2000); see also Chaidez, 133 S.Ct. at 1103; Padilla, 559 U.S. at 365.

In González, the First Circuit explained that "[w]hat renders the plea's immigration effects 'collateral' is … the fact that deportation is 'not the sentence of the court which accept[s] the plea but of another agency over which the trial judge has no control and for which he has no responsibility." Id. (quoting Fruchtman v. Kenton, 531 F.2d 946, 949 (9th Cir. 1976)). Thus, the court held that the doctrine of collateral consequences barred "any ineffective assistance claims based on an attorney's failure to advise a client of his plea's immigration consequences." Id. at 28. As part of its reasoning, the First Circuit cited with approval the decision of United States v. Parrino, 212 F.2d 919, 921-22 (2nd Cir. 1954), "holding that where evidence was clear that defendant had asked counsel whether he could be deported after pleading guilty, and counsel had unequivocally, but erroneously, replied

'no,' counsel had not been constitutionally ineffective and withdrawal of guilty plea was not required." González, 202 F.3d at 25-26 (emphasis provided).[2]

But the Supreme Court later held in Padilla that the Sixth Amendment's guarantee of effective assistance of counsel requires an attorney for a criminal defendant to provide advice about the risk of deportation arising from a guilty plea. Chaidez, 133 S. Ct. at 1105 (citing Padilla, 559 U.S. 356). The Sixth Amendment not only requires an attorney to provide advice, it also protects the criminal defendant from receiving affirmative misadvice. Id. at 356. As stated by the Supreme Court in Padilla: "there is no relevant difference 'between an act of commission and an act of omission' in this context." Padilla, 559 U.S. at 370 (quoting Strickland, 466 U.S. at 690). Thus, under Padilla, both affirmative misadvice and failure to advice about immigration consequences of a guilty plea, are deemed a violation of the Sixth Amendment.

Almost three years after the decision in Padilla, the Supreme Court held in Chaidez, 133 S.Ct. at 1103, that it had announced a "new rule" in Padilla, and therefore under the principles set out in Teague v. Lane, 489 U.S. 288 (1989), Padilla does not have retroactive effect. Chaidez, 133 S.Ct. at 1105.[3] Accordingly, the Supreme Court denied Chaidez's

---

[2] See also United States v. Quin, 836 F.2d 654, 655 (1st Cir. 1988) (stating that deportation as a "collateral consequence of conviction" was "legally irrelevant, even as to an outright guilty plea"); and United States v. George, 869 F2d 333, 337 (7th Cir. 1989) ("While the Sixth Amendment assures an accused of effective assistance of counsel in 'criminal prosecutions,' this assurance does not extend to collateral aspects of the prosecution.'").

[3] In Teague, the Supreme Court adopted Justice Harlan's view of retroactivity for cases on collateral review; that is, "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U.S. at 310.

petition for a writ of *coram nobis,* which had been pending before the Supreme Court when Padilla was decided.

Like in Chaidez, Castro's petition for a writ of *coram nobis* (based on ineffective assistance of counsel under the Sixth Amendment) must be denied. The record shows that Castro pleaded guilty and was sentenced to a term of three years probation on December 20, 2002. Dockets # 201, 202 & 362. Castro's conviction became final in 2003, and Padilla was decided in 2010. Docket # 362. Almost nine years after his conviction became final, Castro filed this writ of *coram nobis*. But by then, the Supreme Court had determined that defendants whose conviction became final prior to Padilla cannot benefit from its holding, see Chaidez, 133 S.Ct. at 1113. Therefore, even if this court were to hold an evidentiary hearing to corroborate Castro's allegations about his counsel's erroneous advice about the deportation consequences of his pleading guilty, he cannot benefit from the ruling in Padilla. Accordingly, the Court need not entertain the First Circuit's tripartite test for *coram nobis* relief, and it would be futile to hold an evidentiary hearing on this matter.

Castro, however, argues that although not binding, the Court should follow the Second Circuit's holding in Kovacs. In Kovacs, a petition for a writ of *coram nobis* was brought before the Second Circuit on the ground that Kovacs' lawyer "rendered ineffective assistance by giving erroneous advice concerning the deportation consequences of pleading guilty to that offense." 744 F.3d at 48. The Second Circuit explained that United States v. Couto, 311 F.3d 179, 188 (2nd Cir. 2002), held that an affirmative misrepresentation of the deportation consequences of a guilty plea falls outside the range of professional competence

required under the performance component of the Strickland test. Kovacs, 744 F.3d at 50.[4] Kovac's conviction, however, became final in 2001; that is, before Padilla and Couto were decided. And even though the Supreme Court held in Chaidez that Padilla had no retroactive effect, the Second Circuit in Kovacs determined that its holding in Couto was not a "new rule" under Teague. Citing its own precedent and a few decisions from other district and circuit courts, the Second Circuit stated that, even though it was not expressly recognized until Couto was decided in 2002, "[w]e have little trouble concluding that, by the time Kovacs' conviction became final, the Couto rule was indicated, and was awaiting an instance in which it would be pronounced." Citing only to the dissenting opinion in Chaidez, the Second Circuit further explained that "Couto did nothing more than apply the 'age-old principle that a lawyer may not affirmatively mislead a client.'" Kovacs, 744 F.3d at 51 (quoting Chaidez, 133 S.Ct. at 1119 (Sotomayor, J. dissenting)).

Kovacs is inapposite here. As explained in Chaidez, the Second Circuit was only one of "three federal circuits (and a handful of state courts) [that had] held before Padilla that misstatements about deportation could support and ineffective assistance claim." Chaidez, 133 S.Ct. at 1112. That is, a minority of courts recognized, prior to Padilla, a separate rule for material misrepresentations, regardless of whether they concerned deportation or another collateral matter." Id. In other words, in Kovacs the court did not rely on Padilla to grant relief to petitioner, but on Second Circuit precedent that predated Padilla and allowed for the relief sought by petitioner.

---

[4] Under Strickland, "[a] claim of ineffective assistance entails a showing that: (1) the defense counsel's performance was objectively unreasonable, and (2) the deficient performance prejudiced the defense." Id. at 49.

Here, however, the Court has not found and Castro has not cited any First Circuit decision recognizing this kind of pre-Padilla rule. On the contrary, like the majority of courts, the First Circuit had only adopted the collateral/direct doctrine in which immigration consequences remained collateral, and thus the failure of counsel to advise his client of the potential immigration consequences of a conviction or any misstatements about this matter did not violate the Sixth Amendment. See Chaidez, 133 S.Ct. at 1112, n. 14; Padilla, 559 U.S. at 365 n. 9 (citing, among others, González, 202 F.3d at 25 (explaining that "[a]long with numerous other courts of appeals, we have held that deportation is only a *collateral* concomitant to criminal conviction"). The Second Circuit decided Kovacs in accordance with a "separate rule" for material misrepresentations recognized by a minority of courts. See Chaidez, 133 S.Ct. 1112. But this is an exception that "co-existed happily with precedent, from the same jurisdictions (and almost all others), holding that deportation is not 'so unique as to warrant an exception to the general rule that a defendant need not be advised of the [collateral] consequences of a guilty plea." Id. Since Castro has not shown that the First Circuit had adopted this type of reasoning prior to Padilla, such relief is not available to Castro. Therefore, Chaidez controls here.

There is one loose end. On his second supplemental motion to show cause, Castro also alleged that he interpreted the comments of the AUSA during the meetings as if he "was not going to have any problems with immigration, and that they were not going to intervene with him." Dockets # 661 & 665-2 (Sworn Statement).

The Court has recognized that "the right to counsel is the right to the effective assistance of counsel." Strickland, 466 U.S. at 686. The government violates the right to

effective assistance "when it <u>interferes</u> in certain ways with the ability of counsel to make independent decisions about how to conduct the defense." <u>Id.</u> (emphasis provided); <u>see also</u> <u>Perry v. Leeke</u>, 488 U.S. 272 (1989) (citing <u>Geders v. United States</u>, 425 U.S. 80 (1976)).

Here, Castro's sworn statement is based only on his interpretation of the AUSA's alleged comments. Even if Castro's allegations about AUSA's comments were proven true and were not merely an erroneous interpretation of AUSA's comments, the AUSA is not the defendant's counsel. Castro has not shown how the purported remarks by the AUSA interfered with his lawyer's ability to make independent decisions about his defense. Castro has also failed to argue with proper legal citations and supporting authorities how his right to the assistance of counsel guaranteed by the Sixth Amendment was impinged by the AUSA's alleged acts.[5] The Court therefore disregards these allegations as Castro does not develop this argument.

**Conclusion**

For the reasons set forth above, Castro's petition for a writ of *coram nobis* is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 27th day of June, 2014.

        s/ *Salvador E. Casellas*
        SALVADOR E. CASELLAS
        U.S. Senior District Judge

---

[5] Local Criminal Rule 112 provides that motion practice in criminal cases shall be subject to Local Civil Rule 7, among others. Pursuant to Local Civil Rule 7, "[a]ll matters submitted to the Court for consideration shall be presented by written motion filed with the Clerk incorporating a memorandum of law, including citations and supporting authorities." The Court has been permissive enough to allow Castro a show-cause response and two additional supplemental motions. <u>See</u> Dockets # 661, 666 & 668.